**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
HARDEV SINGH,                 :
                              : Civil Action No. 05-4539 (JAG)
         Petitioner,          :
                              :
    v.                        :           **O P I N I O N**
                              :
ALBERTO R. GONZALEZ, et al.,  :
                              :
         Respondents.         :
_____:

**APPEARANCES:**

   HARDEV SINGH, Petitioner, Pro Se
   555 Clay Street
   San Francisco, CA 94111

   CHRISTOPHER J. CHRISTIE, United States Attorney
   COLLETTE R. BUCHANAN, Assistant U.S. Attorney
   970 Broad Street, Suite 700
   Newark, New Jersey  07102
   Attorneys for Respondents

**GREENAWAY, JR., District Judge**

Petitioner, Hardev Singh ("Singh"), filed a Petition seeking the issuance of a Writ of Habeas Corpus under 28 U.S.C. § 2241, on or about September 16, 2005.  In the Petition he challenges his indefinite detention as unlawful and unconstitutional.  At the time that he filed his petition, Singh was being detained by the Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("BICE") at an immigration detention facility in Elizabeth, New Jersey, pending his removal

from the United States.  He is still in DHS/BICE custody at this time.

The named respondents are Alberto R. Gonzalez, Attorney General of the United States, and Michael Chertoff, Secretary of the United States Department of Homeland Security ("DHS").  The Government filed an Answer to the petition on December 13, 2005, with a certified copy of the relevant administrative record.  For the reasons set forth below, the petition will be denied without prejudice.

## BACKGROUND

Singh is a native and citizen of India who entered the United States via the JFK International Airport in New York on or about December 7, 2000, with a fraudulent passport.  On March 26, 2001, Singh filed an application for asylum with the legacy Immigration and Naturalization Service[1] in San Francisco, California.  Asylum was denied on May 21, 2001 based on material inconsistencies found by the asylum office between Singh's testimony and the asylum application.  The matter was then referred to an Immigration Judge ("IJ").  On July 24, 2003, the IJ denied all applications for relief from removal, and ordered

---

[1] Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS").  See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  The Bureau of Immigration and Customs Enforcement ("BICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

that Singh be removed from the United States.  Singh was not taken into custody at that time.  Singh did appeal the IJ's denial decision to the Board of Immigration Appeals ("BIA").  The BIA dismissed the appeal on October 5, 2004, and Singh timely filed a petition for review with the United States Court of Appeals for the Ninth Circuit.  On April 4, 2005, the Ninth Circuit issued a stay of removal pending resolution of the matter.  It appears that review of the removal order and denial of asylum is still pending before the Ninth Circuit at this time.

On February 2, 2005, Singh was stopped by the New Jersey State Police for a traffic violation and was taken into custody after a routine check by the State Police revealed that an immigration warrant was issued for Singh.  Singh was then turned over to the custody of the DHS/BICE Fugitive Unit later that same day.  Singh has remained in DHS/BICE custody since February 2, 2005.

On or about June 6, 2005, the BICE conducted a post-order custody review with respect to Singh's continuing detention.  A decision was made to continue custody because Singh had not completed his Indian passport application, as required by the government of India.  Another custody review was conducted in October 2005.  Again, a decision to continue detention was made. The worksheet for this custody review shows that travel documents were requested from the Indian consular, but removal cannot be effectuated due to the judicial stay of removal issued by the

Ninth Circuit on April 4, 2005. The worksheet further notes that Singh is regarded as a flight risk.

Singh filed this habeas petition on or about September 16, 2005 seeking his release from detention pending removal. Singh argues that his indefinite detention is unlawful and unconstitutional under Zadvydas v. Davis, 533 U.S. 678 (2001) and 8 U.S.C. § 1231(a)(6), because he has been detained for more than six months and his removal from the United States is not reasonably foreseeable.

## DISCUSSION

### A.  Standard of Review

Singh seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, petitioner challenges his continued detention since February 2, 2005. As stated above, Singh claims that his indefinite detention is constitutionally impermissible and unlawful because he has been held for more than six months and his removal is not foreseeable. He states that his continued detention violates 8 U.S.C. § 1231(a)(6).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions

4

must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

Respondents admit that Singh is detained pursuant to 8 U.S.C. § 1231(a), but argue that the judicial stay of removal is an act that prevents Singh's removal and extends the removal period under the express terms of 8 U.S.C. § 1231(a)(1)(C). Therefore, Singh's continued custody is lawful.

This Court does not find that petitioner's continued detention is mandated under § 1231(a)(1)(C), as suggested by respondents.  However, for the reasons stated below, Singh's continued custody does not violate federal statutory or constitutional law at this time.

**B.  Discussion**

Post-removal-order detention is governed by 8 U.S.C. § 1231(a).  Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard. Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish that his removal is not reasonably foreseeable. See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

In addition § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."

Here, petitioner argues that he should not be subject to incarceration simply because he secured a stay of removal. However, it has been held that the six-month presumptively reasonable post-order removal period of Zadvydas is tolled when an alien requests judicial review of a removal order. See Soberanes v. Comfort, 388 F.3d 1305, 1311 (10th Cir. 2004)(detention "directly associated with a judicial review process that has a definite and evidently impending termination point" is "more akin to detention during the administrative review process, which was upheld [by the Supreme Court]")(citing Demore v. Kim, 538 U.S. 510, 527-29 (2003)); Wang v. Ashcroft,

320 F.3d 130, 145-47 (2d Cir. 2003)("where a court issues a stay pending its review of an administrative removal order," the post-order detention provisions of § 1231 do not apply because "the removal period commences on 'the date of the court's final order'"); Akinwale v. Ashcroft, 287 F.3d 1050, 1052 n.4 (11th Cir. 2002)(by applying for stay, petitioner interrupted the running of the time under Zadvydas); Evangelista v. Ashcroft, 204 F. Supp.2d 405, 409 (E.D.N.Y. 2002)(petitioner's reliance on Zadvydas to be released from detention is "disingenuous" when sole reason being held is his requested stay of deportation); Hines-Roberts v. Ashcroft, 2003 WL 21305471 at *3 (D. Conn. Jun. 5, 2003)(unpubl.)(as a result of stay of deportation, Attorney General could not seek to bring about petitioner's deportation, and therefore, period of detention does not raise due process issue presented in Zadvydas); Archibald v. INS, 2002 WL 1434391 at *8 (E.D. Pa. July 1, 2002) (unpubl.) (because petitioner asked for and was granted stay of deportation, he is not being held in violation of Zadvydas, but rather held pursuant to stay he requested).

    Here, a stay of the removal was granted by the United States Court of Appeals for the Ninth Circuit on April 4, 2005.  As the stay is still in effect, the presumptively-reasonable six-month period has not yet begun to run pursuant to 8 U.S.C. § 1231(a)(1)(B)(ii).  Moreover, there is no indication in the record that Singh's removal to India is not reasonably

foreseeable. Travel documents have been requested and there is nothing to indicate that such travel documents will not be issued once, and if, the stay of removal is lifted. Accordingly, it would appear that Singh's post-removal-order detention is statutorily compliant.

Nevertheless, under certain circumstances, the sheer length of an alien's prolonged detention may violate his right to due process under the Fifth Amendment.[2] In <u>Oyedeji v. Ashcroft</u>, 332 F. Supp.2d 747, 753 (M.D. Pa. 2004), the district court noted that the "price for securing a stay of removal should not be continuing incarceration." Thus, the issue in this case is whether the due process clause of the Fifth Amendment requires that Singh, a deportable alien, should be afforded an opportunity to be heard on the question of conditional release pending judicial review of a final administrative order of removal, the

---

[2] In this regard, the Court notes the parallel to <u>Zadvydas</u>, which recognized the constitutional implications of prolonged detention for those aliens subject to a final order of removal. Realistically, the prolonged confinement of those detainees whose potentially meritorious challenge to removal is part of a congested court docket is indistinguishable from the indefinite detention of those aliens whose native countries refuse repatriation. Furthermore, this concern for an unjustified continuing detention for those aliens pending administrative removal proceedings was discussed by Justice Kennedy in his concurring opinion in <u>DeMore v. Kim</u>, 538 U.S. 510, 523 (2003). The Supreme Court stressed that mandatory detention of aliens pending their administrative removal proceedings was justified only "for the brief period necessary for their removal proceedings." 538 U.S. at 513. However, Justice Kennedy recognized that lawful permanent resident aliens "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." <u>Id.</u> at 523.

8

execution of which has been stayed by judicial order.  This Court concludes that the Fifth Amendment requires such review.  See Oyedeji, 332 F. Supp.2d at 753-754; Harrison v. Hogan, 2005 WL 2020711 (M.D. Pa. July 18, 2005); Haynes v. Department of Homeland Security, 2005 WL 1606321 (M.D. Pa. July 8, 2005).

The Supreme Court recognized that "[f]reedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." Zadvydas, 533 U.S. at 690; Tineo v. Ashcroft, 350 F.3d 382, 398 (3d Cir. 2003).  Indeed, the Third Circuit has held that

> [w]hen detention [of an alien] is prolonged, special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable.  The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category.  Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption.

Ngo v. INS, 192 F.3d 390, 398 (3d Cir. 1994).  The fact that a stay of removal has been issued should not change this result.  See Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003)(an alien not normally subject to indefinite detention as in Zadvydas should not be detained simply because he seeks avenues of relief legally available to him; while the alien may be responsible for seeking a stay of removal, he is not responsible for the length of time such determinations may take); Oyedeji, 332 F. Supp.2d at 753 (the price for securing a stay of removal should not be indefinite detention).

9

Having concluded that Singh is protected by the Fifth Amendment's Due Process Clause, this Court must next determine the review to which Singh is entitled with respect to conditional release. The Third Circuit's decision in <u>Ngo</u> provides relevant instruction in this case with respect to the rules governing post-order custody reviews, as now set forth in 8 C.F.R. § 241.4(i).[3] The rules specified the following: (1) advance written notice to alien of an opportunity to present information supporting release; (2) the alien has a right to representation

---

[3] The rules evaluated by the Third Circuit in <u>Ngo</u> are no longer in force, but seven elements listed by the court offer guiding principles by which to measure the current review procedures now in effect at 8 C.F.R. § 241.4. For instance, under 8 C.F.R. § 241.4(i), the Director of the Headquarters Post-Order Detention Unit ("HQPDU") is required to designate a two-person panel to make recommendations on whether an alien should be released or detained. This recommendation must be unanimous. The initial review, and at the beginning of subsequent reviews, the review panel examines the alien's records. If the panel does not recommend release, or if the HQPDU Director rejects a recommendation for release, the alien shall be personally interviewed by the review panel. The alien may have a representative at this interview, subject to reasonable security concerns, and he may submit any information he believes may be pertinent in securing his release.

Under 8 C.F.R. § 241.4(d), an alien may obtain a conditional release from detention by showing that his release will not pose a significant risk of flight and danger to the community, to the safety of others or to property pending removal. Under 8 C.F.R. § 241.4(e), an alien is eligible for release if the review panel or the HQPDU Director find that the following criteria are met: (1) travel documents are not available or immediate removal is otherwise not practicable or not in the public interest; (2) the alien is presently a non-violent person; (3) the alien is likely to remain non-violent if released; (4) the alien is not likely to pose a threat to the community if released; (5) the alien is not likely to violate the conditions of release; and (6) the alien does not pose a significant flight risk if released.

10

at the review; (3) the alien has a right to an annual personal interview; (4) written explanations for a custody decision must be provided; (5) an opportunity for administrative review must be given; (6) custody reviews should occur every six months; and (7) a refusal to presume continued detention based on criminal history.  Ngo, 192 F.3d at 399.  The Third Circuit held that these provisions, if conscientiously applied, gave reasonable assurance of fair consideration of a petitioner's application for conditional release pending removal.  Id.

Here, the administrative record shows that Singh has received two custody reviews since his initial detention on February 2, 2005.  The first review occurred in June 2005 and the decision to continue custody was made because Singh had not completed his passport application required by the government of India, in violation of his duty to cooperate.

The second review in October 2005 again continued custody due to the judicial stay of removal and evidence of petitioner's flight risk if released pending removal.  There is no record of a criminal history or disciplinary reports with respect to petitioner.  Both reviews consisted of an examination of petitioner's file by the BICE reviewing officials without a personal interview with the review panel.  However, the file indicates that Singh was represented by counsel, who had made several requests for Singh's release or parole while the case is under review before the Ninth Circuit, and who provided

11

documentation in support of Singh's conditional release. Notably, the October 2005 custody review worksheet shows that there are no special circumstances or concerns that meet the criteria of 8 C.F.R. § 241.14 for Singh's continued detention.[4]

Nevertheless, a written Decision to Continue Detention was dated October 27, 2005 and sent to petitioner. The decision states that Singh is not being released pending his removal because his removal is imminent and because he presents a flight risk. The decision acknowledges that a stay of removal was issued precluding the BICE from enforcing deportation at this time.

This Court has carefully reviewed the record and, giving due consideration to petitioner's arguments, finds that, at this time, petitioner received the process to which he was due with respect to his detention pending removal. Singh received two custody reviews within one year from his initial detention. There is no dispute that removal to India will be imminent once the stay is lifted since the consular officials have assured that travel documents will be available at that time. The record also shows that Singh did not initially cooperate with completion of his passport application. Further, at the time that Singh was stopped in New Jersey on a traffic violation, he was under an immigration warrant, and was referred to the BICE Fugitive Unit.

---

[4] This Court notes that the October 2005 worksheet shows that Singh has a place to live in the U.S. if released, and that he has family ties in the U.S.

12

This recent incident plainly suggests that Singh may be a flight risk.[5] Finally, the Court is not inclined to find the BICE decisions to continue custody to be anything other than a meaningful individualized determination of Singh's status pending adjudication of the validity of his removal order.

Accordingly, the Court concludes that Singh's detention is not constitutionally impermissible at this juncture, and the petition will be denied without prejudice to allow Singh the opportunity to reassert his claims regarding continued detention if the BICE does not provide adequate due process in the future, as set forth herein.

## CONCLUSION

For the reasons set forth above, this petition will be denied without prejudice to Singh bringing a new petition, if the Government fails to provide him with an adequate custody review in the future that comports with the due process principles set forth in this Opinion. An appropriate order follows.

  S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: February 21, 2006

---

[5] It should also be noted that Singh entered the United States on a fraudulent passport, and that his asylum application contained information that was inconsistent with petitioner's interview by the asylum office.